Eastern District of Kentucky
FILED
DEC 6 - 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 06-111-GWU

HAROLD E. CALDWELL,                                          PLAINTIFF,

VS.                   **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Caldwell

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Caldwell

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Caldwell

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The final administrative decision indicated that the plaintiff had "severe" pneumoconiosis as of October 31, 2000, his Date Last Insured (DLI) (Tr. 14, 17). This condition impaired the plaintiff to the extent he could only perform a limited range of medium level work, and could not return to his past work. (Tr. 16, 17-18). However, a vocational expert (VE) was able to identify significant numbers of jobs that Caldwell could still do, according to the administrative law judge (ALJ), so benefits were denied. (Tr. 16-17, 18).

The plaintiff's case is made more difficult by virtue of the fact that no medical records in the transcript (Tr. 2-3) directly coincide with the period at issue, e.g., the October, 1995 alleged onset date (Tr. 44) through the 2000 DLI.[1]

Other than remote hospital records from the early 1980s showing a negative chest x-ray (Tr. 124) and no bony abnormalities of the right knee, leg and ankle by x-ray (Tr. 141), the early records contain a number of pneumoconiosis evaluations from late 1993 (Tr. 3), still before the alleged onset date. The evaluations do reveal that the plaintiff had radiological evidence of pneumoconiosis at that time (Tr. 187,

---

[1] The Date Last Insured noted on page 1 of Exhibit 4D is December, 2000. (Tr. 53). The ALJ cited an October 31, 2000 DLI. (Tr. 13). However, the discrepancy is harmless error since no medical records were dated in November or December, 2000, either. (Tr. 2-3).

7

196, 200, 201, 206, 207, 208, 209, 212, 215, 219, 228, 232), but with multiple normal spirometric (Tr. 188, 197, 200, 12, 216, 219, 232) or arterial blood gas (Tr. 188, 197, 219, 232) test results. Doctors Robert Powell (Tr. 197, 200), Emery Lane (Tr. 213) and John Dineen (Tr. 219) either commented that Caldwell was physically able to return to mining or "comparable" work or had "no respiratory impairment"; at most, one of them noted that it was medically advisable for the plaintiff to avoid coal dust in the future (Tr. 219, 227). One other physician, Glen Baker, did opine that the plaintiff should not only not return to mining but "may have difficulty doing sustained manual labor, on an eight hour basis, even in a dust-free environment." (Tr. 233). Even assuming Baker's opinion was more definite than the word "may" would imply, the fact remains that going into the critical period, there was already evidence from some equally-weighted physicians that the plaintiff was even less restricted than the ALJ's assessment.

As noted previously, there was no evidence of medical treatment or evaluation from 1995 through the end of 2000.

Indeed, the first medical records from after the critical period are dated some two years after the DLI. These are laboratory test results for cholesterol and triglycerides (Tr. 154), with no accompanying clinical data as far as can be discerned. Then, a Pineville Community Hospital record shows an admission for difficulty in breathing and coughing; the patient history, however, indicated that, while Caldwell had a history of pneumoconiosis, as of that date he had never had a major

8

Caldwell

hospitalization, had not been seen at the facility "for more than 7 years," and had been "doing fine two days prior to admission" (Tr. 145). The discharge summary indicated that a chest x-ray had revealed acute bronchitis which had resolved on discharge. (Tr. 144).

<u>Subsequent</u> treatment records from Shailander Peesapati do not clearly "relate back" any condition to the critical period nor does the doctor seem to express a residual functional capacity assessment, even for this later period. (Tr. 156-160).

In the face of this evidence, the plaintiff's only argument seems to be that the opinion of Glen Baker was improperly ignored. Baker's opinion neither came within the critical period, nor was it from a treating source. It was contradicted by other medical opinions, both of roughly the same time frame. It was also, the Court notes, contrary to an opinion by Medical Reviewer Timothy Gregg. (Tr. 28, 179).

The decision will be affirmed.

This the ___6___ day of December, 2006.

G. WIX UNTHANK
SENIOR JUDGE